THE UNITED STATES BANKRUPTCY COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

GERALD D. LABRUNO
and KAY F. LABRUNO

    Debtors
_____/

Case No.: 8:08-bk-06339-KRM
Chapter 7

**MEMORANDUM OPINION AND ORDER GRANTING
DEBTORS' MOTION FOR SUMMARY JUDGMENT ON
THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)(1) AND (b)(2)**

THIS CASE came on for hearing on January 12, 2009, on the Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2), filed by the Office of the United States Trustee ("UST") (Document No. 19), and on Motions for Summary Judgment filed by the UST and by the debtors (Document Nos. 30 and 31). The issue before the Court is whether the debtors' Chapter 7 filing is presumptively abusive, where their "means test" computation includes a deduction of monthly mortgage payments that they owed on the petition date, but which they intend to extinguish, post-petition, by surrendering the home to the mortgagee.

There is no controlling authority in the Eleventh Circuit on this issue, which arises under the "means test" provisions of 11 U.S.C. §707(b)(2), which were added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"). The majority of bankruptcy courts that have ruled on this issue have concluded that it is permissible to deduct long-term debt owed on the petition date, without regard to the

debtor's intention to surrender the collateral, reasoning that, for purposes of determining eligibility for Chapter 7, the "means test" is to be regarded as a financial "snapshot" as of the petition date. This Court finds the reasoning of these cases to be persuasive. Therefore, I conclude that these debtors have satisfied the "means test," which does not have to be recalculated to take into account their intended post-petition surrender of the mortgaged property.

## BACKGROUND

The debtors filed for relief under Chapter 7 on May 2, 2008. They are married, in their early sixties, and have no dependents. Their debts are primarily "consumer/non-business" debts. On Schedule F, the Debtors listed $75,349.42 in unsecured non-priority debts consisting of $47,519.42 in credit card charges, $27,650.00 in non-dischargeable student loans, and $180.00 in medical bills. The Chapter 7 trustee has filed a Report of No Distribution.

The debtors' annual income is above the Florida state median for a family of two. Accordingly, they had to comply with the "means test" by completing the Statement of Current Monthly Income and Means Test Calculation on Official Form B22A. On line 12 of that form, the debtors listed $6,509.33 in combined "current monthly income".[1] On line 42(d), they deducted an average monthly payment of $2,118.00 for the secured debt of their homestead, including the monthly mortgage payment of $1,785.00 plus property taxes, insurance and association dues of $333.00. With this deduction, the debtors

---

[1] " Current monthly income" is a defined term. 11 U.S.C. §101(10A).

showed monthly disposable income of a *negative* $399.59. Based on that computation, the presumption of abuse under 11 U.S.C. §707(b)(2) would not arise.

Although the debtors lived in the home when they filed this case, they had already stopped making the mortgage payments. On their Statement of Intentions, they disclosed their plan to surrender the property (Document No. 1). On or about June 14, 2008, a few days after their initial meeting of creditors, the debtors vacated the home and moved into a smaller residence for which they pay rent of about $1,200 per month.[2]

There is no dispute that the homestead expenses of nearly $2,200 per month were a drain on these debtors, whose combined income (per Schedule I) is about $4,890 per month. According to their Schedule A, there was no equity in the home, which was valued at approximately $187,000.00, but encumbered by a $245,000 mortgage. The monthly mortgage payment at the time of filing was $1,785.23, but was set to increase in October of 2008, to $2,078.28. The debtors paid directly their homeowners' insurance, property taxes, and homeowners' association dues totaling $333.00 a month. The debtors' Schedule J, which deducts only their current rent of $1,200 per month, but does not include the pre-petition mortgage payment, indicates a monthly *deficit* of $177.67.

The UST objects to the debtors' "means test" computation, arguing that they should not be permitted to deduct the mortgage payment, but should be limited to the IRS rental housing allowance of $710.00, which is about $500 per month less than the debtors' actual rent. With this adjustment, so argues the UST, the debtors' estimated

---

[2] At the time of the hearing, the discharge had not been entered and it is unclear from the record whether the mortgagee had completed foreclosure or a deed in lieu had been delivered to the mortgagee.

3

monthly disposable income would go from a negative $339.00 to a positive $950.12, giving rise to the presumption of abuse and likely resulting in dismissal of the case.

## DISCUSSION

With the enactment of BAPCPA, Congress instituted "a two-step process to detect and deter abusive filers: the . . . objective means test prescribed in Section 707(b)(2), and the more subjective test of Section 707(b)(3), which requires an analysis of the facts of a particular case." *In re Parada*, 391 B.R. 492, 496 (Bankr. S.D. Fla. 2008) (citing *In re Henebury*, 361 B.R. 595, 603-04 (Bankr. S.D. Fla. 2007). The so-called "means test" was added in 2005 to screen out those Chapter 7 cases where a debtor's "currently monthly income," as defined, less certain statutorily allowed expenses, exceeds the formula thresholds set forth in Section 707(b)(2)(A).

The allowed expense category which applies to the issue in this case is found in Section 707(b)(2)(A):

> (iii) . . . the sum of—
> (I) the total of all amounts *scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition;* . . . *divided by 60.*

11 U.S.C. § 707(b)(2)(A)(emphasis added).

In this case, the narrow issue before the Court is whether the above provision allows a debtor to deduct a monthly mortgage payment that, as of the petition date, is legally owed for the next 60 months, but which the debtors intend to eliminate by surrendering the mortgaged property and obtaining a Chapter 7 discharge. The UST

asserts that the debtors may only deduct payments for those secured debts they actually will be paying for the 60 months after the petition.

The majority of the reported cases on this issue have adopted the "snapshot" view of the means test – it is a bright line, mechanical test meant to determine quickly the state of the debtor's finances as of the petition date. These cases hold that long-term secured debt payments that are owed on the petition date may be deducted without regard to a debtor's future intent to extinguish the expense by later surrendering the encumbered property. *In re Castillo*, 2008 WL 4544467 (Bankr. S.D. Fla. 2008); *In re Parada*, 391 B.R. 492 (Bankr. S.D. Fla. 2008); *In re Hayes*, 376 B.R. 55 (Bankr. D. Mass. 2007); *In re Benedetti*, 372 B.R. 90 (Bankr. S.D. Fla. 2007); *In re Kelvie*, 372 B.R. 56 (Bankr. D. Id. 2007); *In re Wilkins*, 370 B.R. 815 (Bankr. C.D. Cal. 2007); *In re Randle*, 2007 WL 2668727 (N.D. Ill. 2007); *In re Kogler*, 368 B.R. 785 (W.D. Wis. 2007); *In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa. 2007); *In re Haar*, 360 B.R. 759 (Bankr. N.D. Ohio 2007); *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006); *In re Simmons*, 357 B.R. 480 (Bankr. N.D. Ohio 2006); *In re Hartwick*, 352 B.R. 867 (Bankr. D. Minn. 2006), aff'd in part, rev'd in part, sub nom. *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007); and *In re Walker*, 2006 WL 1314125 (Bankr. N.D. Ga. 2006). A handful of cases have ruled to the contrary. *In re Naut*, 2008 WL 191297 (Bankr. E.D. Pa. 2008); *In re Burden*, 380 B.R. 194 (Bankr. W.D. Mo. 2007); *In re Ray*, 362 B.R. 680 (Bankr. D. S.C. 2007); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006); and *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006).

The majority view is more consonant with the text of the statute. In using the phrase *"scheduled as contractually due,"* Congress elected not to use the word "paid," thereby indicating the possibility of unpaid secured debt obligations being included in the debtor's means test calculation. The common meaning of the word "scheduled" is "to plan for a certain date." *In re Walker*, 2006 WL 1314125, 3 (Bankr. N.D. Ga. 2006)(citing Random House Webster's Unabridged Dictionary 1713 (2d ed. Rev. 2001)). A natural reading of the above statutory language is that it means those payments that are to come due (i.e., "scheduled") per the debtor's contract with the lender.

This Court finds unpersuasive the arguments of the UST that Congress intended the word "scheduled" to refer to a debt being listed on the debtor's bankruptcy schedules. The listing of a secured debt on a debtor's schedules does not change the fact that the payments are "contractually due" on the petition date. *In re Harr*, 360 B.R. 759, 764-65 (Bankr. N.D. Ohio 2007). Likewise, a debtor's declaration of an intention to surrender collateral post-petition does not alter the debtor's contractual obligation, on the petition date, to pay the debt. *In re Walker*, 2006 WL 1314125 at 13-14 (surrender, by itself, does not eliminate a debtors' contractual liability for a debt).

The UST urges the Court to read the remaining language of 11 U.S.C. § 707(b)(2)(A)(iii), *"in each month of the 60 months following the date of the petition,"* as permitting the deduction of only those payments that will remain contractually due for *each* of the 60 months following the petition. This would require an on-going post-petition, and even post-discharge, review of the debtor's finances to determine whether there is a presumption of abuse in the earlier filing itself. Only where the debtor

reaffirms the secured debt would the debt continue to be "contractually due" after discharge. There is nothing in the statute to suggest that reaffirmation is a pre-condition to eligibility for relief under Chapter 7.[3]

Nothing in the phrase *"following the date of the petition"* suggests that the deduction is permitted only for payments actually made. Instead, the phrase modifies the preceding *"scheduled as contractually due." In re Hayes*, 376 B.R. 55, 63 (Bankr. Mass. 2007). The more natural reading of the phrase "in each month of the 60 months following the date of the petition" is that of identifying the period over which the debtor's "contractually due" payments are to be averaged, not as imposing a requirement that actual payments be made post-petition. *In re Haar*, 360 B.R. 759, 766 (Bankr. N.D. Ohio 2007).

In sum, I share with the view expressed by Judge Cristol in *In re Benedetti*, 372 B.R. 90, 96-97 (Bankr. S.D. Fla. 2007)):

> Using a "snapshot" view of the Debtor's expenses on the date of filing makes sense in the context of a Chapter 7 case. The application of the provisions of Section 707(b)(2) involves an evaluation of the Debtor's financial condition on the petition date such that a post-petition surrender of collateral is irrelevant and inconsequential.

## CONCLUSION

The "snapshot" approach is consistent with Congress' enactment of a mechanical test to determine quickly, as of the petition date, whether a presumption of abuse arises

---

[3] Reaffirmation is a voluntary election by the debtor. An individual Chapter 7 debtor may reaffirm, redeem or surrender collateral. 11 U.S.C. § 521(a)(6). A debtor may even rescind a reaffirmation agreement at any time prior to discharge or within sixty (60) days after the agreement is filed with the court, whichever occurs later. 11 U.S.C. § 524(c)(4).

7

from the filing of the petition itself. Accordingly, this Court concludes that 11 U.S.C. § 707(b)(2)(A)(iii)(I) allows a debtor to deduct from current monthly income in the means test calculation those long-term secured debt payments that are owed on the petition date, even if the debtor intends to surrender the encumbered property after filing. Accordingly, it is

**ORDERED**:

1. The Debtor's Motion for Summary Judgment on the UST's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) and (b)(2) is GRANTED;

2. The Trustee's Motion for Summary Judgment on the UST's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) and (b)(2) is DENIED; and

3. The UST's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) and (b)(2) is DENIED.

DONE and ORDERED in Tampa, Florida on this _April 24_, 2009.

K. RODNEY MAY
United States Bankruptcy Judge

8